WARREN McGRAW & KNOWLES LLC
By: Terence Sean McGraw, Of Counsel                    Attorney for Plaintiff
Attorney I.D. #46750
920 Lenmar Drive
Blue Bell, PA 19422
(267) 708-9200
(267) 708-9204 fax

**IN THE UNIITED STATES DISTRICT COURT OR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Theresa Chiusolo**<br>759 Chesam Turn<br>Southampton, PA  18966<br>　　　　　　　　Plaintiff<br><br>　　vs.<br><br>**UNITEDHEALTH GROUP INCORPORATED**<br>9900 Bren Rd. East<br>MN008-R120<br>Minnetonka MN 55343<br>　　　　　　　　Defendant<br>　　and<br><br>**UHG Inc. Group Benefits Plan**<br>9900 Bren Rd. East<br>MN008-R120<br>Minnetonka MN 55343<br>　　　　　　　　Defendant<br>　　and<br><br>**Group Long Term Disability Plan For Employees of UNITEDHEALTH GROUP INCORPORATED**<br>9900 Bren Rd. East<br>MN008-R120<br>Minnetonka MN 55343<br>　　　　　　　　Defendant<br>　　and<br><br>**Hartford Life and Accident Insurance Company**<br>One Hartford Plaza<br>Hartford, Connecticut 06155<br>　　　　　　　　Defendant | Civil Action No. |

## COMPLAINT

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 et seq. (ERISA) and more particularly § 502(a)(1)(B) of that Act 29 U.S.C.A. § 1132(a)(1)(B). The court has jurisdiction of this matter under 29 U.S.C.A. § 1132(e).

## Parties

1. Plaintiff, **Theresa Chiusolo (Chiusolo or Plaintiff)**, is an adult individual and resident of the Commonwealth of Pennsylvania, County of Bucks, who, at all times material hereto resided at 759 Chesam Turn, Southampton, PA 18966.

2. Defendant, **UNITEDHEALTH GROUP INCORPORATED (UHG or Employer)**, is upon information and belief a corporation engaged in providing health insurance coverage. At all times material hereto, defendant maintained a registered business office at 9900 Bren Rd. East, MN008-R120, Minnetonka MN 55343.

3. Defendant, **UHG Inc. Group Benefits Plan (UHG Group Plan)**, is upon information and belief an employee welfare benefit plan established by UHG for the benefit its employees. At all times material hereto, the UHG Group Plan maintained a registered business office at 9900 Bren Rd. East, MN008-R120, Minnetonka MN 55343.

4. Defendant, **Group Long Term Disability Plan for Employees of UNITEDHEALTH GROUP INCORPORATED (UHG LTD Plan)**, is upon information and belief an employee welfare benefit plan established by UHG for the benefit its employees. At all times material hereto, defendant maintained a registered business office at 9900 Bren Rd. East, MN008-R120, Minnetonka MN 55343.

5. Defendant, **Hartford Life And Accident Insurance Company (The Hartford)**, is upon information and belief a corporation engaged in providing disability insurance coverage. At all times material hereto, defendant regularly conducted business in the Commonwealth of Pennsylvania and has a registered business office at One Hartford Plaza, Hartford, Connecticut 06155.

### Jurisdiction and Venue

6. Jurisdiction of the Pennsylvania Courts of Common Please or United States District Court for the Eastern District of Pennsylvania is proper pursuant to 29 U.S.C.A. §1001 et. seq., more specifically, 29 U.S.C.A. §1132.

7. Venue is proper pursuant to Pa. R. C. P 2179 or 29 U.S.C.A. §1132(e)(2).

### Facts

8. At all times material hereto, UHG sponsored and administered UHG Group Plan and or UHG LTD Plan for the benefit of its employees.

9. At all times material hereto, UHG, and/or UHG Group Plan and/or UHG LTD Plan purchased a long term disability policy from The Hartford indemnifying their liability to UHG employees under the plans for losses resulting from the employees disability from employment. A true and correct copy of a summary plan description describing relevant provisions of the policy is attached hereto as Exhibit "A.".

10. The policy was and is an "employee welfare benefit plan" as defined in 29 U.S.C.A. §1002(1).

11. Chiusolo was an employee of UHG (date of hire 02/12/2018) and was a beneficiary/participant of/in the plan(s) sponsored by UHG.

12. On or about February 21, 2020 Chiusolo filed a claim for long term disability benefits with Hartford alleging that she had been unable to work due to a disabling medical condition since September 24, 2019. Chiusolo last worked on September 23, 2019.

13. She alleged she was unable to perform her regular occupation because she suffered physical and cognitive impairments resulting from a cerebral vascular accident (stroke).

14. On or about February 11, 2022, Hartford wrote to Chiusolo advising her that benefits would be terminated as of March 2, 2022 because she did not satisfy the "any occupation" definition of disability applicable as of that date.

15. Chiusolo filed a timely appeal of the termination of benefits. Medical evidence submitted in conjunction with the appeal included evidence that she suffered cerebrovascular accident (CVA/stroke) with intracranial hemorrhage, resulting in right-sided hemiplegia, cognitive slowing, and short-term memory loss. She also experienced hemiparesis, numbness, double vision, migraines, and difficulty with fine motor skills, particularly in her dominant hand, leading to frequent dropping of objects. In addition to the neurological sequelae of her stroke, she had a complex medical background including hypertension, lumbar disc disorder, fibromyalgia, mild depression, generalized anxiety disorder, psoriasis, elevated sed rate, high cholesterol, morbid obesity, and diastolic dysfunction. Her psychiatric symptoms included underlying depression and anxiety, which were being managed with medication.

16. Claimant also presented a vocational evaluation performed by John Dieckman MS, CRC, CDCMS stating that the vocational assessment performed by Hartford's consultant was deficient and opined that claimant was disabled from all occupations.

17. Claimant also presented her Social Security Disability file and an Administrative Law Judge decision finding her capable of a reduced range of sedentary work, unable to perform her regular occupation, lacking transferable skills to work within her limited occupational base and, thus, totally disabled. The Administrative Law Judge noted: ""The treating providers have expressed no doubt about the claimant's frequent migraines that have been characterized as intractable and incapacitating. In addition, there is evidence of ongoing shortness of breath related to congestive heart failure. The records amply support that the claimant can perform no more than a reduced range of sedentary exertion work."

18. Opinion evidence submitted from Chiusolo's treating primary provider and her neurologist(s) indicated that Chiusolo could only perform low stress work, was expected to be off task 20% or more of the work day, and would be absent for or more days per month.

19. On or about December 19, 2023, Hartford denied the appeal and upheld the termination of benefits relying on the opinions of a non-examining peer reviewer with a specialty in internal medicine who offered opinions with regard to physical limitations only, and a vocational consultant's review that relied on that limited opinion alone.

20. The non-examining peer review consultant noted, in his report:

> "Post-stroke, the claimant has residual leg weakness affecting normal walking, but can walk unaided with care. The right hand shows numbness, weakness, and poor coordination, hindering tasks like lifting and typing, Cognitive issues such as slowness of thought, word-finding difficulties, and short-term memory problems persist. ***A primary barrier to returning to work is frequent, severe migraines, worsened post-stroke, occurring 2-3***

*times weekly with at. least one severe episode involving nausea and requiring hours of rest in a quiet, dark room. These migraines impact reliability and routine activities. The claimant takes Aimovig, Nurtec, and Zofran for migraine management, yet severe migraines persist weekly*. Bariatric surgery improved cardiovascular health and hypertension but didn't alleviate migraines.

While the claimant's symptoms are acknowledged, there were no new exam findings to support restrictions and limitations greater than those previously specified."

21. The "previous restrictions and limitations" were exertional in nature, only – "lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; reaching above shoulder with weights (load bearing} 20 pounds occasionally, 10 pounds frequently; standing up to a total of 20 minutes at a time, for a total of 2 hours out of an 8 hour workday; walking up to a total of 20 minutes at a time, for a total of 2 hours out of an 8 hour workday; sitting is unrestricted with the ability to shift positions briefly while seated as needed for comfort; balancing, stooping, bending, crawling, crouching, kneeling, climbing step stool s/stairs, and squatting occasionally; no climbing ropes or ladders, and the claimant should not perform scaffolding altogether; no restrictions on upper extremity use such as fine or gross manipulation and reaching in all directions."

22. Dr. Gupta, the peer reviewer cited above was provided only with contact information for Laura Butterwick, M.D. despite the fact the file documented treatment by Howard Natter, M.D., a neurologist, for ongoing sequelae of plaintiff's stroke and migraines. When Dr. Gupta called Dr. Butterwick for a peer consult, she deferred to Dr. Natter concerning neurological restrictions. Dr. Gupta made no documented effort to contact Dr. Natter.

23. Dr. Gupta failed to consider restrictions regarding the motor use of plaintiff's dominant right upper extremity despite a record replete with evidence of deficits in function of the limb. Dr. Gupta failed to consider documented complaints of significant dyspnea on

exertions. Dr. Gupta noted plaintiff's severe migraines and their impact on plaintiff's "reliability and routine activities" and did not controvert the opinions of plaintiff's treating providers that she could only perform low stress work, was expected to be off task 20% or more of the work day, and would be absent for or more days per month.

24. Hartford also relied upon the Employability Analysis Report of Ruby Kaspers, MS, CRC. Her report relied on the opinion of Dr. Gupta regarding plaintiff's exertional limitations alone. She failed to consider all appropriate medical and vocational information, including the uncontroverted opinions of plaintiff's treating doctors regarding her need to perform low stress work, likelihood of being off task 20% or more of the work day, and anticipation she would be absent for or more days per month.. She ignored and/or disregarded the vocational findings and opinions of John Dieckman MS, CRC, CDCMS without adequate explanation.

25. Chiusolo has exhausted her administrative remedies.

26. At all times material hereto, Chiusolo was disabled as defined by the terms of the Policy and qualified to receive benefits under its terms. She submitted legally adequate proof that she was totally disabled as defined by the terms of the policy because of serious medical conditions, impairments known to the defendants via the application and review process, and that she was was unable to fulfill the material and essential duties of her regular occupation or any other suitable occupations.

27. Hartford did not properly or adequately consider the documented impairments, resulting symptoms & pain, or the documented physical and/or cognitive and/or functional limitations of Chiusolo, rejected them for inappropriate reasons, and failed to employ appropriate evaluative techniques.

## COUNT I
## PLAINTIFF V. ALL DEFENDANTS
## ERISA VIOLATION

28.  Plaintiff incorporates herein the allegations contained in the proceeding paragraphs in their entirety.

29.  Pursuant to 29 U.S.C.A. §1132(a)(1)(b), Plaintiff is entitled to bring this civil action to recover benefits due to her under the terms of his policy.

30.  Plaintiff believes and, therefore, avers that:

a)  the policy insuring the plan was issued in and subject to the jurisdiction and laws of a state that has banned discretionary clauses in long term disability policies requiring the court to apply a de novo review standard; or, in the alternative,

b)  plan fiduciaries may not have been expressly delegated discretionary authority to determine eligibility for benefits or to construe the policy's terms requiring this court to apply a de novo review standard; or, in the alternative,

c)  the determination involved purely factual determinations requiring this court to exercise de novo review pursuant to Luby vs. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991); or, in the alternative,

d)  the administrator, fiduciary, and/or insurer making the determination did so under the influence of a conflict of interest making the application of a de novo or modified standard of review appropriate; or, in the alternative,

   e)  the determination was arbitrary or capricious, unsupported by substantial evidence, or founded on an erroneous interpretation of policy provision or law.

 31. The decision to terminate benefits was erroneous, arbitrary and capricious because:

   a)  Hartford relied on peer reviews provided by financially interested non-examining consultants, who did not consider all important clinical data in the possession of Hartford, cherry picked the records, disregarded the competent objective medical evidence of record, disregarded competent opinion evidence of plaintiff's providers, disregarded plaintiff's subjective complaints, offered opinions that lacked adequate foundation in the medical record, failed to consider all the evidence of record, failed to offer any reasonable explanation as to why evidence supporting disability was ignored or disregarded, and failed to address contrary opinion evidence.

   b)  Hartford did not secure a medical examination or attempt to resolve obvious inconsistencies in the opinions of its medical consultant(s), or inconsistencies in the evidence.

   c)  Hartford and its vendors inappropriately disregarded plaintiff's documented subjective complaints without adequate explanation.

   d)  Hartford and its vendors failed to appropriately consider uncontroverted and competent medical opinions of plaintiff's treating physicians without adequate explanation.

e) Hartford's vendors offered opinions that lacked adequate foundation in the medical-vocational record, failed to consider all the evidence of record, and failed to offer any reasonable explanation as to why evidence supporting disability was disregarded.

f) Hartford's vocational consultant(s) performed only a perfunctory analysis(es) matching the general exertional category of occupations under the Dictionary of Occupational Titles with the exertional capacities expressed by the peer reviewer(s) and failed to conduct or document a particularized assessment based upon all of plaintiff's appropriate restrictions and limitations as well as other vocational factors they were required to consider.

g) Hartford's consultants failed to consider the impact of claimant's pain despite the fact that chronic pain is known by vocational experts to limit in whole or part the ability to relate to people and establish rapport; the ability to plan, initiate, and execute programs; the ability to relate to people in order to motivate and direct employees and maintain good employer, employee, and customer relationships; attention to detail for examining records and preparing reports; the ability to concentrate for long periods; the ability to maintain alertness over time; diplomacy and tact in dealing with people; accuracy/rapidity/attention to detail in exchanging money and recording transactions; accuracy and attention to detail for close clerical work; ability to successfully avoid errors in performing detailed work; and capacity for sustained attention to the function of machines or equipment.

  h)  Hartford disregarded or ignored the findings and opinions of Laura Butterwick, M.D., Howard Natter, M.D, and Sandra Mazella, CRNP without adequate explanation.

  i)  Hartford disregarded or ignored the vocational findings and opinions of John Dieckman without adequate explanation.

  j)  Hartford disregarded or ignored the decision of the Social Security Administration awarding total disability benefits without adequate explanation.

  k)  Hartford failed to comply with the various requirements of the Department of Labor's Claims Procedure Regulation at 29 C.F.R §2560.503-1.

  l)  Hartford failed to evaluate all the medical evidence, failed to identify and resolve any conflicts in the medical evidence, and failed provide a rationale for why it credited or rejected certain medical evidence while accepting other medical evidence.

  m)  Hartford's decision was based on a policy or plan provision that was arbitrary and capricious or otherwise contrary to law.

  n)  Hartford's processing of the claim was legally deficient.

  o)  Hartford's claim handling procedures otherwise violated federal law.

  p)  Hartford otherwise disregarded competent medical and/or evidence.

  q)  Hartford processed the claim in a manner indicating that it was seeking to secure a pre-ordained result.

    r)    Hartford otherwise acted in an arbitrary and capricious manner.

    s)    Hartford's roles as both the ultimate payor of benefits and the entity deciding entitlement to those benefits resulted in a significant structural conflict of interest.

32.    As a direct and proximate result of those actions, plaintiff has been caused to incur attorneys' fees and legal expenses in a total amount not yet known to plaintiffs.

33.    As a direct and proximate result of those actions, Chiusolo has been deprived of benefits to which she is legal entitled.

34.    **WHEREFORE**, plaintiff requests judgment against defendants as follows:

    a.    Ordering defendant to pay Chiusolo all benefits due under the policy retroactive from March 2, 2023 and ongoing;

    b.    Declaring that all rights and benefits due Plaintiff are vested and non-forfeitable or, in the alternative, to award Plaintiff a money judgment for all sums due and owing;

    c.    Awarding Plaintiff prejudgment interest from Plaintiff's denial of permanent total disability benefits until the date of judgment;

    d.    Awarding Plaintiff attorney's fees, court costs and all other reasonable costs incurred, pursuant to 29 U.S.C.A. §1132(g)(1); and,

   e.  Granting Plaintiff such other and further relief as the court may deem just and proper.

               Respectfully submitted,
               **Warren & McGraw, LLC**

             By: /s/ Terence Sean McGraw
               Terence Sean McGraw
               Attorney for Plaintiff

Date: February 10, 2026